U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

In re:

CHARLES E. FOGARTY

Vs. C.N.: 1:08-cv-256 S

CHARLES A. PISATURO, JR., TRUSTEE

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO APPEAL AND FOR STAY OF ORDER

CHARLES E. FOGARTY, Appellant, submits this Supplemental Memorandum in support of his Motion for Leave to Appeal and Stay of Order scheduled for hearing before this Court on August 19, 2008. The purpose of this Supplemental Memorandum is to address issues raised by and before this Court at its Consideration of Appellant's Emergency Motion for Stay of Order on August 8, 2008.

While this case presents many complex issues, the matter before the Court is relatively simple: Should the Bankruptcy Court have approved the Joint Motion for Approval of Compromise and denied Appellant's Objection to that motion? My answer is no because additional discovery and testimony may result in facts being presented to the Bankruptcy Court that will warrant voiding the loan being foreclosed pursuant to the Court's order. If that loan is voided, assets will remain in the Debtor that will be available to creditors; but if the loan is foreclosed, the case will be effectively disposed of with nothing left for creditors.

Part of the problem facing this Court is the basis for the Bankruptcy Court's decision on May 22, 2008 to approve the Compromise Motion. The order issued by the Bankruptcy Court on June 4, 2008 in part states the order is based upon "for good cause shown and for the reasons articulated by the Court at the conclusion of the May 22nd chambers session,..." Neither the order

nor the Docket Report delineates those reasons, and a request for a transcript of that chambers session was included in Appellant's Designation of Record on Appeal. (As was a copy of the transcript of the 3/5/08 chambers session, which was sealed by the Court and which Appellant believes is essential to this appeal.) The lack of findings of fact to support the Bankruptcy Court's order is an appropriate basis on which to sustain the appeal.

In the absence of such findings Appellant submits that the Court entered the order to avoid being involved in complex, difficult, expensive and time consuming litigation when the moving parties, Appellant and other creditors, do not have the financial resources to fund such efforts. The Bankruptcy Court has been reluctant to address allegations of perjury and criminal behavior - - precisely the conduct Appellant believes justifies voiding the loan from LR-6A to Boulder Brook and/or the sales transaction from Brushy Brook to Boulder Brook.

Viewed in the entire factual context, there is something fundamentally wrong with the Brushy Brook/Boulder Brook transaction. Brushy Brook sold real property (365 acres in Hopkinton, Rhode Island with a PUD approval) to Boulder Brook and received no cash - - All of the purchase monies went to pay Brushy Brook mortgages and transaction expenses, and Brushy Brook took a second mortgage behind the loan from LR-6A. The LR-6A loan is admittedly usurious and contained draconian default penalties, but Brushy Brook acquiesced to those terms. The compromise order will leave, I believe, Brushy Brook with no funds, no payment on its mortgage and no assets - - in excess of $3.2 million lost.

Boulder Brook's conduct is even stranger. Boulder Brook buys an asset with monies borrowed in a usurious loan transaction having draconian default provisions and then makes no effort to pay the loan, improve its position or retain the property. Who acts like this?

Appellant and the other Brushy Brook creditors cried foul. In the ensuring litigation they have become aligned against a consortium comprised of Brushy Brook management, Boulder Brook, LR-6A and a gaggle of others (The attorneys' list is truly impressive.), all of whom seem to be advocating for or at least acquiescing in the foreclosure by LR-6A of the loan it holds. Who benefits from this?

Where were the legitimate business expectations in what was purported to be a business transaction?

The answer Appellant believes is that the Brushy Brook/Boulder Brook transaction was never a legitimate business transaction. The need for discovery to be completed is the need to inquire into this transaction. Appellant believes that such discovery should include examination into the following:

1. The relationship of Realty Financial Partners and David Allen with parties in the matter and activities of Realty Financial Partners and entities it controls. In addition to this matter we know of at least two other usurious loan situations involving these entities - - Conant Crossings and Meadow Creek - - and on information and belief Appellant represents there are multiple other parties damaged by loan practices of Realty Financial Partners and David Allen.

2. The relationships between Jonathan Savage and Ralph Palumbo, which predated the formation of Boulder Brook and at a time when Ralph Palumbo was Brushy Brook's representative and was Appellant's personal representative. The role held by Ralph Palumbo as manager of Boulder Brook was never disclosed prior to the closing, and Ralph Palumbo conducted all of the initial negotiations between the parties and handled documents drafted for transactions related to this matter.

3. The conduct of Attorney Jonathan Savage who negotiated with Appellant on the purchase of the real property, made representations and proposals relating to the matter and then entered into a separate deal with Brushy Brook management as a member of Boulder Brook.

4. The relationship between Realty Financial Partners and Attorney Savage (RFP is a client of said attorney's firm.). Why would an attorney form an LLC to buy an asset with funds borrowed at a usurious rate and then take no action to pay the loan or protect the asst from loss?

These actions do not pass the smell test. Appellant has maintained that the transaction was a loan to own scam. If the foreclosure is allowed to proceed, Appellant does not believe the

proceeds will exceed what is owed to LR-6A, even with the stipulated token reduction in the rate of interest on the loan.

There are serious public policy issues involved in this matter. In the Meadow Creek case in Massachusetts the Judge in ruling on competing summary judgment motions alluded to the effect of public policy on usurious loan transactions and, as it affects this motion, ordered that all stays relating to discovery be vacated. See LR5-A Limited Partnership vs. Meadow Creek LLC, et al, Suffolk County, Massachusetts Superior Court Civil Action No. 06-2804BLS1 (Copy of order date October 17, 2007 appended.)

Discovery will be expensive and time consuming, and Appellant is aware of these considerations. If, however, discovery results in facts that warrant voiding the LR-6A loan, those expenses can be recovered from Debtor's bankruptcy estate. The compromise order provides another manner in which to recover the costs if the order is eventually sustained - - the $100,000.00 to be paid to the Trustee.

Delay in foreclosing the loan will not be prejudicial. Brushy Brook will not lose any money, Boulder Brook is not paying any money, and LR-6A will still get its money if the loan is sustained. On the other hand, if the property is foreclosed on, the Creditors will have lost all realistic ability to recover.

The Court should sustain the appeal, stay the foreclosure and order that discovery proceed.

Respectfully Submitted,

Charles E. Fogarty
251 Narragansett Avenue East
Wakefield, Rhode Island 02879

CERTIFICATION

I certified I mailed a copy of the foregoing to Matthew J. McGowan, Esq., Salter McGowan Sylvia & Leonard, 321 South Main Street, Providence, Rhode Island 02903, and Robert D. Wieck, Esq. and Denean M. Russo, Esq., Attorneys for LR6-A, LLC, MacAdams Wieck Deluca & Gemma Incorporated, 101 Dyer Street, Suite 400, Providence, Rhode Island 02903 on August 15, 2008 by first class mail, postage prepaid

[signature]