COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 06-2804 BLS1

notice sent 10/17/07
W.L.P..
J.P.B.
A.M.C.--R G
R.M.B.--B M
R.E.B.
A.E.S.--P L G T
J.O.T.
D.H.R.--T & W

(mm)

LR5-A LIMITED PARTNERSHIP

vs.

MEADOW CREEK, LLC, et al.

MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on cross-motions for partial summary judgment: Counterclaim and Third Party Defendants' Motion for Partial Summary Judgment, Paper #80; and Plaintiffs-in-Counterclaim and Third-Party Plaintiffs' Cross Motion for Partial Summary Judgment, Paper #83.

For purposes of this memorandum the Court will refer to the counterclaim and third-party defendants as the "LR5-A Group" and the plaintiffs-in-counterclaim and third-party plaintiff as the "Meadow Creek Group."

## BACKGROUND

In the background are a series of loans from the LR5-A Group, or one of the entities therein, to the Meadow Creek Group, in connection with a real estate development project in Dracut, Massachusetts. For these purposes it is enough to understand that the Meadow Creek Group was the developer and the LR5-A Group, or one of its entities, was the non-conventional lender.

There have been a number of problems, such that the Meadow Creek Group is, and has been for some time, in serious default on the loans. This has caused a need for additional

financing and foreclosure activities from time to time.

On two occasions, the first on February 13, 2003, and the second on February 17, 2006, the parties entered into forbearance agreements at times of and in connection with additional financings. Each of these two forbearance agreements included broadly worded release language running from the Meadow Creek Group to the LR5-A Group, purporting to release LR5-A from any and all prior obligations and defaults. Again, the full breadth of the releases, the parties covered thereby, and other matters in connection therewith need not be detailed here. There are, in fact, factual disputes over aspects thereof.

A significant element in this case is that each of the promissory notes executed by the Meadow Creek Group as borrower, running to the LR5-A Group as lender, provide for a base interest rate of 21% per annum compounded monthly in arrears, based upon the outstanding principal balance. The significance of that interest rate is that it exceeds the 20% upper limit under G.L. c. 271, § 49, the Massachusetts Criminal Usury Statute.

The LR5-A Group seeks by its motion partial summary judgment in its favor for all claims against it which pre-date February 17, 2006, the date of the most recent release. In doing so it argues that the releases in the forbearance agreements resolve any such claims in the LR5-A Group's favor.

The Meadow Creek Group, in its motion, asks the Court to determine that the LR5-A Group is in violation of G.L. c. 271, § 49. Presumably, if such a determination is made, efforts will be made by the Meadow Creek Group to have the loan transactions modified or voided entirely.

The Court is of the view that it can perform a useful service to the parties if it resolves

these two competing positions.[1]

DISCUSSION

The first contested issue is whether claims under the Criminal Usury Statute can be released by agreements of the potential claimants such as is argued by the LR5-A Group with respect to the release language in the forbearance agreements.

The LR5-A Group contends that there is no law in Massachusetts which would support the proposition that a release of past claims, including those under G.L. c. 271, § 49, is unenforceable. It argues that this is particularly so in the context here of negotiated releases between two commercial entities represented by counsel. For this Court to rule otherwise, the LR5-A Group asserts, "no lawsuit which alleged a violation of the usury statute (or, for that matter, a violation of ch. 93A, ch. 176D or even an alleged violation of the civil RICO statute . . .) could ever settle, because the releases exchanged by the parties would always be subject to collateral attack as being against public policy and unconscionable." (Emphasis in original.)

The Meadow Creek Group takes the opposite approach. It argues that where, as here with G.L. c. 271, § 49, generally policy concerns rather than the protection of private property rights animate a statutory protection, that protection cannot be waived by contract.

Neither side has cited the Court to any Massachusetts case dealing with G.L. c. 271, § 49 that is directly on point on either side of the issue.

Thus, the Court looks first to the oft-cited usury case of Begelfer v. Najarian, 381 Mass. 177 (1980). One cannot read that opinion without coming away with a clear sense that the usury

[1] In this regard the Court observes that material factual disputes stand as a barrier to summary judgment wholly for either side.

statute is a legislative statement of Massachusetts public policy. As Justice Abrams writes in Begelfer: "No reason suggests itself why we should not give effect to the legislative policy expressed in G.L. c. 271, § 49. . . ." id. at 184; "[T]he Legislature has determined that as a matter of public policy person who charges more than twenty per cent interest must register with the Attorney General," id.; and "The public policy against usury is clearly a matter for grave legislative concern . . . and the wisdom of their choice or remedies is solely their responsibility." Id. at 185.

Over 100 years ago, the SJC noted that "[i]t has been said that where laws are enacted on grounds of general policy their uniform application for the protection of all citizens alike is desirable, and an agreement to waive their provisions is generally declared invalid. . . ." Washington National Bank v. Williams, 188 Mass. 103, 107 (1905).

Where a statute "rests upon grounds of public policy, it is not the power of one who may be directly affected by it to contract in advance that it may be disregarded." Beacon Hill Civic Ass'n v. Ristorante Toscano, Inc., 422 Mass. 318, 324 (1996). Here, of course, the LR5-A Group points out that it is not seeking prospective relief from the usury statute, but just relief for its past actions.

This Court concludes that G.L. c. 271, § 49 is sufficiently infected with public policy such that it cannot be the subject of an ordinary release or waiver. That is not to say, however, that a case involving claims under the statute cannot be resolved short of a full trial on the merits.

Having determined that the release language in the two forbearance agreements cannot eliminate or bar the claims under the Criminal Usury Statute does not mean that the LR5-A Group loses or that the Meadow Creek Group prevails. Issues, with material factual content,

remain as to whether the LR5-A Group found shelter in the safe harbor of G.L. c. 271, § 49(*d*) by filing appropriate and timely notices of its lending practices insofar as they relate to interest charges. See, e.g., Clean Harbors, Inc. v. John Hancock Life Ins. Co., 64 Mass. App. Ct. 347, 364-366 (2005).

Further, even if there were violations of G.L. c. 271, § 49, the Court must still make a determination "based on all the facts, circumstances, and conditions surrounding the loan, to void it, to rescind it, to refund, to credit any excess interest paid, to reform the contract, or to provide any other relief consistent with equitable principles." Id. at 366, quoting from Beach Associates, Inc. v. Fauser, 9 Mass. App. Ct. 386, 394 (1980). (Emphasis added.) This, of course, cannot be accomplished on the present summary judgment record.

As stated above, what remains with regard to the other grounds promoting the release language or attacking it, are all too factually intensive to be resolved on the present motions.

ORDER

For the foregoing reasons, the Counterclaim and Third Party Defendants' Motion for Partial Summary Judgment, Paper #80, is DENIED; and the Plaintiffs-in-Counterclaim and Third-Party Plaintiffs' Cross Motion for Partial Summary Judgment, Paper #83, is ALLOWED, in limited part only, to the extent that the release language in the two forbearance agreements does not eviscerate or bar the claims under G.L. c. 271, § 49.

Any stays for responding to the amended complaint or of discovery pending resolution of these motions, see, e.g., Paper #74, are hereby vacated.

Allan van Gestel
Justice of the Superior Court

DATED: October 17, 2007